# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

TONKA WAY CON PONDER,

        Defendant.

Case No. 24-CR-04033/01-SRB

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1.     **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri ("the Government") and Tonka Way Con Ponder ("the defendant"), represented by T.J. Kirsch. The defendant understands and agrees that this plea agreement is only between the defendant and the Government and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified.

2.     **Defendant's Guilty Plea.** The defendant agrees to plead guilty to the following Counts of the superseding indictment:

- Count 1, which charges the defendant with violating 18 U.S.C. §§ 1959(a)(3) and 2, that is, aiding and abetting assault with a dangerous weapon in aid of racketeering activity;

- Count 2, which charges the defendant with violating 18 U.S.C. § 1959(a)(6), that is, conspiracy to commit a crime involving assault resulting in serious bodily injury in aid of racketeering activity;

- Count 3, which charges the defendant with violating 18 U.S.C. § 1959(a)(3), that is, assault resulting in serious bodily injury in aid of racketeering activity;

- Count 4, which charges the defendant with violating 18 U.S.C. § 924(c)(1)(A)(iii), that is, discharge of a firearm in furtherance of the crime of violence charged in Count 3;

- Count 5, which charges the defendant with violating 18 U.S.C. § 1959(a)(3), that is, assault with a dangerous weapon in aid of racketeering activity;

- Count 10, which charges the defendant with violating 21 U.S.C. § 846, that is, conspiracy to distribute 5 grams or more of methamphetamine (actual), contrary to the provisions of 21 U.S.C. § 841(a)(1) and (b)(1)(B);

- Counts 11 and 12, which charge the defendant with violating 21 U.S.C. § 841(a)(1) and (b)(1)(A), that is, distribution of 50 grams or more of methamphetamine (actual); and

- Counts 29, which charges the defendant with violating 26 U.S.C. § 5861(d), that is, possession of an unregistered firearm.

By entering into this plea agreement, the defendant admits to committing these offenses and to being guilty of these offenses.

3. **Statutory Penalties.** The defendant understands Count 1, 3, and 5 of the superseding indictment each carry the following maximum penalties: not more than 20 years' imprisonment, not more than 3 years' supervised release, a fine of not more than $250,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that these offenses are Class C felonies.

The defendant understands Count 2 of the superseding indictment carries the following maximum penalties: not more than 3 years' imprisonment, not more than 1-year supervised release, a fine of not more than $250,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class E felony.

The defendant understands Count 4 of the superseding indictment carries a mandatory-minimum sentence of 10 years' imprisonment and the following maximum penalties: not more than life imprisonment, not more than 5 years' supervised release, a fine of not more than

$250,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that the term of imprisonment imposed for Count 4 must run consecutively to any other term of imprisonment imposed on the defendant, including any term of imprisonment imposed for Count 3. The defendant further understands that this offense is a Class A felony.

The defendant understands Count 10 of the superseding indictment carries a mandatory-minimum sentence of 5 years' imprisonment and 4 years' supervised release and the following maximum penalties: not more than 40 years' imprisonment, not more than a lifetime term of supervised release, a fine of not more than $5,000,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

The defendant understands Counts 11 and 12 of the superseding indictment each carry a mandatory-minimum sentence of 10 years' imprisonment and 5 years' supervised release and the following maximum penalties: not more than life imprisonment, not more than a lifetime term of supervised release, a fine of not more than $10,000,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that these offenses are Class A felonies.

The defendant understands Counts 27, 28, and 29 of the superseding indictment each carry the following maximum penalties: not more than 10 years' imprisonment, not more than 3 years' supervised release, a fine of not more than $10,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that these offenses are Class C felonies.

3

The defendant understands that while the Court must order the sentence imposed on Count 4 to run consecutively, the Court may also order the sentences imposed on the other counts to run consecutively.

4. **Factual Basis for Guilty Plea.** The parties stipulate that the following facts are true and establish both a factual basis for the defendant's guilty plea and the defendant's guilt beyond a reasonable doubt:

<u>The Enterprise</u>

During all relevant times, the defendant was a member of an enterprise engaged in racketeering activity, as those terms are defined in 18 U.S.C. § 1959(b)(1) and (2). The enterprise, as more fully described in paragraphs 6 through 16 of the superseding indictment, consisted of the Galloping Goose Motorcycle Club, including its leadership, membership, and associates. The enterprise included members and associates of the Galloping Goose as well as members and associates of supporting clubs—the Midwest Drifters Motorcycle Club, the Sabres Motorcycle Riding Club, and the Bush Pilots Motorcycle Club. The enterprise had at least three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The members of the enterprise joined together for the purpose of engaging in a common course of conduct and had personnel who functioned as a continuing unit. The enterprise both engaged in and affected interstate commerce.

The defendant became a member of the Galloping Goose no later than November 2019. The defendant agrees that there were other members with the Galloping Goose.

<u>Racketeering Activity</u>

The enterprise, through its members and associates, engaged in racketeering activity, as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1). Specifically, on multiple occasions between approximately 2019 and 2021, individuals associated with the enterprise engaged in conduct involving attempts to obtain property from others through force, threats of force, or intimidation, including efforts to take items of significance from members of the Iron Celtics Motorcycle Association, and this conduct constituted acts or threats involving robbery chargeable under Mo. Rev. Stat. § 570.023. On other occasions, individuals associated with the enterprise engaged in attempts to obtain property from others through the use of actual or threatened force, violence, or fear, and this conduct constituted acts indictable under 18 U.S.C. § 1951.

4

Count 1

On or about December 12, 2020, in the Western District of Missouri, for the purpose of maintaining or increasing his position in the enterprise, the defendant knowingly and intentionally aided and abetted in the assault of Victim 2 with a dangerous weapon, in violation of Mo. Rev. Stat. § 562.041 and 565.052(2).

Specifically, on or about December 12, 2020, F.C., T.C., and Victim 2 were at the Chuckwagon Restaurant in Camdenton, Missouri, eating breakfast. F.C., T.C., and Victim 2 were affiliated with the Iron Celtics Motorcycle Association and the Raiders Motorcycle Club, which at the time were rivals of the Galloping Goose and their affiliates. Two people, whose identity is known to the parties, were also dining in the restaurant. One of the unnamed people called Keith Nolen and said that F.C., T.C., and Victim 2 were making the person and feel uncomfortable. The defendant, Keith Nolen, Paul Gardner, Tretch Lawrence, and other individuals affiliated with the enterprise all travelled to the restaurant, where they collectively assaulted F.C., T.C., and Victim 2. During the assault, one of the assailants struck Victim 2 in the head with a firearm, which caused physical injury to Victim 2. At least one of the defendant's purposes in aiding and abetting the assault was to maintain or increase his position in the enterprise. On October 25, 2022, during a meeting between an undercover ATF Special Agent and the defendant, the defendant looked at the Chuckwagon restaurant and talked about a time he received a call from the previously mentioned unnamed person. The defendant went on and stated that he and other Galloping Goose members waited for the Mongols and when they saw the Mongols then they got out of their trucks and attacked the Mongols.

Count 2

On July 15, 2021 in the Western District of Missouri, for the purpose of maintaining or increasing his position in the enterprise, the defendant knowingly and intentionally conspired with others to commit assault resulting in serious bodily injury to members of the Mongols Motorcycle Club and the Iron Celtics Motorcycle Association, in violation of Mo. Rev. Stat. §§ 562.014 and 565.050.

Specifically, on July 15, 2021, members of the Iron Celtics Motorcycle Association were fundraising outside of the Casablanca Pub & Grill in Lake Ozark, Missouri. Members and affiliates of the Mongols Motorcycle Club were also present.

Members and affiliates of the Galloping Goose and its support clubs, including the defendant, met at the Midwest Drifters' clubhouse. While at the clubhouse, the defendant received a call from a Galloping Goose prospect informing the defendant that the Mongols were at Casablanca. At approximately 6:45 p.m., the Galloping Goose and its support clubs, including the defendant, left the Midwest Drifters' Clubhouse.

5

Around 7:44 p.m., the Galloping Goose and their affiliates, including the defendant, were assembled on the porch of Casablanca. Individuals associated with the Mongols were inside the bar area of Casablanca. When the individuals affiliated with the Mongols attempted to leave by walking out through the individuals affiliated with the Galloping Goose, the individuals affiliated with the Galloping Goose, including the defendant, assaulted the individuals affiliated with the Mongols.

The defendant knowingly agreed with at least one other person that they would assault members of the Mongols and the Iron Celtics; the agreement constituted an agreement to commit the offense of assault resulting in serious physical injury; and with the purpose of furthering that agreement, the defendant or another party to the agreement engaged in at least one overt act in furtherance of the agreement. At least one of the defendant's purposes of engaging in the conspiracy to commit the assault was maintaining or increasing his position in the enterprise.

### Counts 3 and 4

On July 15, 2021, in the Western District of Missouri, for the purpose of maintaining and increasing his position in the enterprise, the defendant knowingly and intentionally assaulted Victim 1 by shooting Victim 1, resulting in serious bodily injury to Victim 1, in violation of Mo. Rev. Stat. § 565.050.

On that same date, during and in relation to the crime charged in Count 3, which is a crime of violence, the defendant knowingly used, carried, and discharged a firearm.

Specifically, during the altercation at Casablanca on July 15, 2021, the defendant knowingly and intentionally used a firearm to shoot Victim 1 multiple times, killing Victim 1. At least one of the defendant's purposes for assaulting Victim 1 was maintaining or increasing his position in the enterprise.

### Count 5

On or about July 15, 2021, in the Western District of Missouri, for the purpose of maintaining and increasing his position in the enterprise, the defendant knowingly and intentionally assaulted Victim 2 with a dangerous weapon, specifically a firearm, by shooting Victim 2, resulting in physical injury to Victim 2, in violation of Mo. Rev. Stat. § 565.052.1(2).

Specifically, during the altercation at Casablanca on July 15, 2021, the defendant knowingly and intentionally used a firearm to shoot Victim 2 in the back, causing physical injury to Victim 2. At least one of the defendant's purposes for assaulting Victim 2 was maintaining or increasing his position in the enterprise.

<u>Counts 10 and 11</u>

From about August 1, 2022, through about October 31, 2022, in the Western District of Missouri, the defendant knowingly and intentionally conspired with co-defendants to distribute a mixture or substance containing 5 grams or more of methamphetamine (actual), a Schedule II controlled substance. The defendant reached an agreement with the co-defendants to distribute at least 5 grams of methamphetamine, the defendant voluntarily and intentionally joined in the agreement, and at the time the defendant joined in the agreement, he knew the purpose of the agreement.

More specifically, following the fatal altercation at Casablanca on July 15, 2021, the Bureau of Alcohol, Tobacco, Firearms and Explosives tasked an undercover agent (the "UC") with infiltrating the Galloping Goose. The UC developed a relationship with the defendant.

On October 11, 2022, the UC arranged to meet the defendant and the other co-conspirators at a business in Camdenton, Missouri. The defendant, and other co-conspirators all arrived at the business together in a white pickup truck. At one point, the defendant went outside to smoke a cigarette, and the UC went outside to speak to him. When the UC met the defendant outside, he said he had something for the UC. The defendant reached in the back of the white pickup truck and retrieved a package, which he handed to the UC. The defendant said the price would be $1,100, and that the UC could pay him whenever the UC could get the money together. The UC asked if the package contained "green," meaning cash, or "ice," meaning methamphetamine. The defendant said it contained "ice." The defendant also said he was charging $450 an ounce and that his profit would be $200. When the UC complained about not being able to make a profit because the price was high, The defendant suggested that the UC sell in "eight ball" quantities to make more money. The defendant indicated that he could obtain quarter and half-pound quantities of methamphetamine for the UC. The defendant also instructed the UC about how to communicate in code about drug deals over the phone. The defendant reiterated that he was fronting the methamphetamine to the UC in advance of payment.

The package the defendant provided to the UC contained 54.8 (+/- 3.3) grams of methamphetamine (actual) that was 100% pure. The defendant knew the package contained methamphetamine.

On October 23, 2022, the UC spoke to on of the co-conspirators by phone. Apparently referring to the October 11 drug transaction, the co-conspirator asked if it was all taken care of. The co-conspirator told the UC that on October 11, the defendant had called the supplier, who later showed up with the methamphetamine. The co-conspirator said he did not know what the defendant had charged the UC, but the price was high for them. The co-conspirator also told the UC that the quality of the methamphetamine was supposed to be better than what was going around.

7

On October 25, 2022, the UC met with the defendant and one of the co-conspirators and paid the defendant for the methamphetamine from the October 11 transaction. The defendant only asked for $1,000 instead of the $1,100 they had previously agreed to. The co-conspirator indicated that s/he knew about the defendant's methamphetamine dealing. The UC asked about obtaining more methamphetamine, and the defendant mentioned Wichita and said it would take a few days.

On October 27, 2022, the UC met with the defendant and one of the co-conspirators in the barn on the defendant's property in Preston, Missouri. The UC talked with the defendant about purchasing more methamphetamine. The defendant said the price would be $900 and the quantity would be the same as the last time. However, the following day, the deal between the defendant and the UC did not go through.

### Count 12

In June 2023, the UC meet with the defendant. During the meeting, the defendant told the UC he could get methamphetamine for the UC. On July 13, 2023, the UC met the defendant at a Casey's gas station in Warsaw, Missouri. The defendant handed the UC a cereal box and indicated it contained two ounces. The defendant said the price was $800, and the UC gave the defendant $800 in cash.

The cereal box contained 54.5 (+/- 3.5) grams of methamphetamine that was 98% pure. The defendant knew the cereal box contained methamphetamine. The defendant had obtained the methamphetamine from a source in Wichita, Kansas, the previous day.

### Count 29

On or about June 21, 2024, the defendant also knowingly possessed a black silencer in the shop on his property in Preston, Missouri, which was also discovered during the execution of the search warrant. This black silencer was a device for silencing, muffing, or diminishing the report of a portable firearm, and the defendant knew it was such a device. The black silencer was capable of operating as designed, and it was not registered to the defendant in the National Firearms Registration and Transfer Record.

5. **Use of Factual Admissions and Relevant Conduct.** The defendant understands and agrees that the facts contained in ¶ 4 and other portions of this plea agreement, as well as admissions the defendant makes during the change of plea hearing, will be used to determine the defendant's guilt and the defendant's advisory sentencing range under the United States

8

Sentencing Guidelines. The defendant likewise understands and agrees that the conduct charged in any dismissed counts of the indictment and all other uncharged related criminal activity may be considered as "relevant conduct" for purposes of calculating the defendant's advisory sentencing range under the Guidelines.

The defendant further understands that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights that arise under those rules and agrees that any such statements, as well as the facts contained in ¶ 4 and other portions of this plea agreement, may be used against the defendant at any time and in any proceeding should the defendant withdraw from this plea agreement.

6. **Sentencing Procedures.** The defendant understands that in determining the appropriate sentence, the Court may impose any sentence authorized by law. While the Court must consider the United States Sentencing Guidelines, the Guidelines are advisory and do not bind the Court. The Court will determine the defendant's advisory sentencing range under the Guidelines at sentencing, but the Court may impose a sentence either above or below that range, so long as that sentence is reasonable.

The defendant further understands that the Court will find facts by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the defendant's advisory sentencing range under the Guidelines. The defendant waives any right to a jury finding beyond a reasonable doubt of all facts used to determine the sentence imposed and waives any right to have those facts alleged in an indictment. The defendant also understands that in finding the facts relevant to the imposition of the defendant's sentence, the Court may

9

consider any reliable information, including hearsay, and that the Court will not be bound by any recommendation regarding the application of the Guidelines or the sentence to be imposed made by the United States Probation Office or the parties.

The defendant likewise understands that any term of imprisonment the Court may impose will not allow for parole and that in addition to a term of imprisonment the Court may impose a term of supervised release. The defendant further understands that a violation of a condition of supervised release could result in the Court imposing an additional term of imprisonment as well as an additional term of supervised release to follow, both subject to the statutory maximums set forth in 18 U.S.C. § 3583.

7.      **Government's Agreements.** Based upon evidence in its possession at this time, the Government agrees not to pursue any additional charges against the defendant for any federal criminal offenses related to the counts to which the defendant is pleading guilty for which it has venue and that arose out of the defendant's conduct described above. Additionally, the Government agrees to dismiss Counts 6, 9, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 27, and 28 at sentencing.

The Government agrees that after the defendant's pleas are accepted by the United States District Judge, the Government will offer to enter into a plea agreement with co-defendant Carolynn Ponder, under which Carolynn Ponder will be permitted to plead to Count 17 of the superseding indictment, the Government will agree to dismiss Count 10 of the superseding indictment as against Carolynn Ponder, and the Government will agree to recommend a sentence of probation for Carolynn Ponder.

The defendant understands that this plea agreement does not foreclose any prosecution for murder or attempted murder; physical or sexual violence; aiding and abetting, attempting,

10

soliciting, or conspiracy to commit murder or physical or sexual violence; and any criminal activity currently unknown to the Government.

8.      **Preparation of Presentence Report.** The defendant understands and agrees the Government will provide the Court and the United States Probation Office a version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which the defendant will plead guilty. The Government may respond to comments made or positions taken by the defendant or the defendant's counsel and may correct any misstatements or inaccuracies.

9.      **Withdrawal of Plea.** Except for change of plea hearings before a United States Magistrate Judge, either party reserves the right to withdraw from this plea agreement at any time prior to the United States District Judge formally accepting the defendant's pleas of guilty. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.

If the defendant waives the right to plead guilty before a District Judge and consents to plead guilty before a United States Magistrate Judge, then the parties' rights to withdraw from this plea agreement for any reason terminate upon the Magistrate Judge's completion of the change of plea hearing with a recommendation that the guilty pleas be accepted.

After the District Judge accepts the defendant's guilty pleas, or the Magistrate Judge completes the change of plea hearing, the defendant may withdraw the pleas only if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts the pleas, the defendant may not withdraw the pleas solely because of the nature or length of the sentence imposed, including if the Court imposes a

11

sentence that is outside the defendant's advisory sentencing range under the United States Sentencing Guidelines or a sentence that the defendant does not expect, like, or agree with.

10. **Agreed Guidelines Applications.** With respect to the application of the United States Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The applicable Guidelines sections for the offenses of conviction are as follows:

- Counts 1, 2, 3 and 5: U.S.S.G. § 2E1.3 and U.S.S.G. § 2A2.2 (most analogous federal offense);

- Count 4: U.S.S.G. § 2K2.4;

- Counts 10, 11, and 12: U.S.S.G. § 2D1.1; and

- Count 29: U.S.S.G. § 2K2.1.

b. The defendant has admitted guilt and clearly accepted responsibility for the defendant's actions, entitling the defendant to a two-level reduction pursuant to U.S.S.G. § 3E1.1(a). In addition, the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Consequently, if the Court finds the defendant's total offense level to be 16 or higher, the defendant is entitled to an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b). This plea agreement constitutes the Government's written motion with the Court for that reduction. This motion will be withdrawn, and the Government will be free to withdraw its recommendation that the defendant receive any reduction for acceptance if, after entering into this plea agreement, the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and the defendant's pretrial release, (2) attempts to withdraw the defendant's guilty pleas, (3) violates the law, or (4) otherwise engages in conduct inconsistent with the defendant's acceptance of responsibility as described in U.S.S.G. § 3E1.1 and its commentary.

c. The parties have not reached an agreement regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the recommendation in the presentence report prepared by the United States Probation Office. The parties reserve the right to contest that recommendation.

d. **The parties agree to jointly recommend a total sentence of 300 months' imprisonment.** The defendant agrees that a total sentence of 300

12

months' imprisonment is a reasonable sentence under 18 U.S.C. § 3553(a). The parties agree to recommend that Counts 1-3, 5, 10-12, and 29 run concurrently with each other and consecutive to Count 4. This agreement by the parties, however, does not bind the Court or the United States Probation Office, and the Court may impose any sentence authorized by law.

e. The parties acknowledge and agree that there are no agreements between the parties with respect to any Guidelines issues other than those specifically listed in this paragraph, including its subparagraphs. As to any other Guidelines issues, the parties are free to advocate their respective positions before the Court.

11. **Financial Disclosures.** The defendant will fully and truthfully disclose all assets and property in which the defendant has any interest or over which the defendant exercises direct or indirect control, including assets and property held by a spouse, nominee, or other third party. These disclosure obligations are ongoing and in force from the execution of this agreement until all financial obligations arising from the defendant's guilty plea—including any forfeiture judgment, restitution order, fine, or assessment—are satisfied in full. The defendant likewise agrees to assist the Government in identifying, locating, returning, and transferring assets for use in payment of restitution, forfeiture, fines, or assessments ordered by the Court.

Within 10 days of signing this plea agreement, the defendant will execute and provide the Government (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submitted to the United States Probation Office. The defendant likewise authorizes the Government to obtain the defendant's credit report. If requested by the Government, the defendant agrees to submit to one or more sworn interviews or depositions regarding the defendant's assets. The defendant understands that the Government will consider compliance with these disclosure obligations when making a recommendation to the Court regarding the defendant's acceptance of responsibility

13

**12.** **Restitution.** The defendant understands and agrees that the Court must order restitution to the victims of the offenses to which the defendant is pleading guilty and that the Court may order restitution in connection with the conduct charged in any dismissed counts or any uncharged related criminal activity. The defendant further understands that the Government may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order or fine the Court imposes.

**13.** **Government's Reservation of Rights.** The Government reserves the right to comment on the evidence supporting the offense conduct in this case and the right to oppose any position advanced by the defendant at sentencing that might be inconsistent with this plea agreement. The Government also reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The Government further reserves the right to oppose, when consistent with this plea agreement, any arguments the defendant might advance on direct appeal or in post-conviction proceedings. In particular, the Government remains free to defend the legality and propriety of the defendant's sentence on appeal or collateral attack, even if the Court chooses not to follow any recommendation made by the Government.

**14.** **Waiver of Constitutional Rights.** The defendant understands that a guilty plea is a complete and final admission of guilt, that by pleading guilty the defendant waives certain constitutional rights, and that the Court will adjudge the defendant guilty without a trial. In particular, the defendant acknowledges being advised of, understanding, and knowingly and voluntarily waiving (1) the right to plead not guilty and to persist in a plea of not guilty; (2) the right to be presumed innocent until the defendant's guilt has been established beyond a reasonable doubt at trial; (3) the right to a jury trial; (4) the right to be represented by, and

14

receive the effective assistance of, counsel—and if necessary, have the Court appoint counsel—at trial; (5) the right to confront and cross-examine adverse witnesses at trial; (6) the right to be protected from compelled self-incrimination; and (7) the rights to testify, to present evidence, and to compel or subpoena a witness to appear on the defendant's behalf at trial.

15.      **Loss of Rights.** The defendant understands that by pleading guilty to a felony offense the defendant will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury. The defendant further understands that during the change of plea hearing, the Court may ask the defendant questions about the offenses underlying the defendant's guilty pleas, and if the defendant answers those questions under oath and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making a false statement.

16.      **Waiver of Pre-Trial Motions.** The defendant understands the right to file certain pre-trial motions and knowingly and voluntarily withdraws any pending motions, waives the right to have any pending motions resolved, and waives the right to file any additional pre-trial motions in this case. This waiver includes, but is not limited to, any motions based on the statute of limitations, the Speedy Trial Act, or any grounds enumerated in Federal Rule of Criminal Procedure 12(b)(3).

17.      **Waiver of Appellate and Post-Conviction Rights.** The defendant understands and acknowledges the right to directly appeal the conviction or sentence in this case and any right to challenge the conviction or sentence collaterally through post-conviction proceedings, including through proceedings under 28 U.S.C. § 2255, 28 U.S.C. § 2241, and *corum nobis*. In exchange for the concessions made by the Government in this plea agreement, the defendant

15

knowingly and voluntarily waives all rights to directly appeal or collaterally attack the conviction or sentence on any non-jurisdictional ground except (1) ineffective assistance of counsel, (2) prosecutorial misconduct, or (3) a sentence greater than the statutory maximum. These are the only non-jurisdictional grounds for direct appeal or collateral attack not waived by this plea agreement.

The grounds for direct appeal or collateral attack that are waived include, but are not limited to, the following: sentencing errors such as a misapplication of the United States Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence; any restitution or forfeiture order; any challenge to the constitutionality of the statute or statutes to which the defendant is pleading guilty or under which the defendant is sentenced; any argument that the defendant's admitted conduct does not fall within the scope of the statute or statutes to which the defendant is pleading guilty; any argument that the defendant's plea was not voluntary; and any argument that the defendant's constitutional rights were violated, other than due to ineffective assistance of counsel or prosecutorial misconduct.

If, however, the Government exercises its right to appeal the sentence imposed under 18 U.S.C. § 3742(b), the defendant is released in part from this waiver and may cross-appeal the sentence imposed as allowed under18 U.S.C. § 3742(a) with respect to any issues that have not been agreed upon in this agreement.

The defendant acknowledges discussing this appeal waiver with counsel and understanding its terms. The defendant waives any explanation of the terms of this waiver under Federal Rule of Criminal Procedure 11(b)(1)(N).

16

**18.** **Waiver of FOIA Request.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974.

**19.** **Defendant's Breach of Plea Agreement.** If the Court determines the defendant committed any crime or violated any condition of release between the signing of this agreement and the date of sentencing; failed to appear for sentencing; provided intentionally misleading, incomplete, or untruthful information to the Government, the United States Probation Office or the Court; or otherwise breached any term of this plea agreement, the Government will be released from its obligations under this agreement and will retain the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant, however, will remain bound by the terms of this agreement, and will not be allowed to withdraw the guilty pleas entered pursuant to this agreement. The defendant likewise will waive the right to challenge the initiation of the dismissed or additional charges following a finding of breach, including by asserting a statute of limitations defense.

**20.** **Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice, and approval of counsel. The defendant acknowledges being satisfied with the assistance of counsel and that counsel has fully advised the defendant of the rights and obligations arising from this agreement. The defendant further acknowledges that no threats or promises, other than the terms and conditions of this agreement, have been made by the Government, the Court, the defendant's counsel, or any other person to induce the defendant to enter a plea of guilty.

**21.** **No Undisclosed Terms.** The parties agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the

17

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the superseding indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the United States Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 5-12-26

**Tonka Way Con Ponder**
Defendant

I am defendant Tonka Way Con Ponder's attorney. I have fully explained to my client his rights with respect to the offenses charged in the superseding indictment. Further, I have reviewed with my client the provisions of the United States Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with my client. To my knowledge, Tonka Way Con Ponder's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 5.17.26

**T.J. Kirsch**
Attorney for Defendant

19

Court in camera, constitute the entire plea agreement between the parties and that any purported term or condition not expressly set forth in this agreement, or an in camera supplement, is not enforceable.

**R. Matthew Price**
United States Attorney

Dated: 5/13/2026

**Aaron Maness**
Assistant United States Attorney

18